39354. FULGHUM INDUSTRIES, INC. v. POLLARD LUMBER COMPANY, INC., et al.

Decided May 16, 1962.

*Abbot & Abbot, Fulcher, Fulcher, Hagler & Harper, E. D. Fulcher, Wm. C. Reed,* for plaintiff in error.

*Randall Evans, Jr.,* contra.

EBERHARDT, Judge. ■ Although error was assigned on the overruling of the defendant's demurrers, there was no oral argument on this point and no insistence thereon in the brief. Therefore, these assignments of error will be considered abandoned. *Code* § 6-1308.

■ Defendant's most forceful contention relates to the grounds of its motion for judgment notwithstanding the verdict. Three grounds are generally urged: (a) That Tankersley was not the servant of the defendant but was a servant of the plaintiff; (b) that there is no evidence of any negligence on the part of Tankersley; and (c) that, due to the length of time between the repair work and the fire, there could be no causal connection between that work and the fire.

■ The testimony on the trial developed that Tankersley was a regular employee of the plaintiff and had worked for it all his adult life. On the Saturday in question, however, he was not working. An agent of the defendant had called one of plaintiff's officers, Robert Pollard, during the week to tell him that the requested repairs would be made on Saturday and to ask that plaintiff "have a man there to help" the repairman. Pollard testified that he had forgotten about the helper until another of plaintiff's officers reminded him of it on Saturday morning. He met the repairman at a store where "This boy, L. M. Tankersley, was in front of the store and I told him to go with [defendant's repairman] to help them fix the debarker." To the question, "You just picked out the first man you saw?", Pol-

lard responded, "That is correct." Pollard went to the debarking machine with the defendant's repairman, Tankersley, and at least one other helper. Pollard sent the other helper to feed his cows and left Tankersley and the repairman working on the debarker. Both Tankersley and the repairman considered Tankersley as subject to the repairman's orders and both also testified that Tankersley did what he was told.

The law as to lent employees is well settled, the test being (1) that the special master must have complete control and direction of the servant for the occasion; (2) that the general master must have no such control; (3) that the special master must have the exclusive right to discharge the servant, to put another in his place or to put him to other work. *Brown v. Smith,* 86 Ga. 274 (12 SE 411, 22 ASR 456); *Adams v. Johnson,* 88 Ga. App. 94 (1) (76 SE2d 135) and citations. In *Bibb Mfg. Co. v. Souther,* 52 Ga. App. 722 (184 SE 421), a factual situation strikingly similar in its "lent servant" phases to that presented here was involved. Plaintiff repairman's employer had contracted with the defendant to make certain repairs. In the course of making the repairs, the plaintiff required some assistance and the defendant sent two negro helpers. One of the helpers negligently dropped a heavy piece of iron on the plaintiff's hand. This court held that the helper was the special servant of plaintiff's employer and, consequently, that the defendant was not liable for his negligence. The court applied the rule set out above stating that all of its requirements related only to the *specific task* for which the servants are loaned. For example, the "right to discharge" that the special master must have means the right to discharge the servant from that particular work. A similar situation was presented and a similar result reached in *Reaves v. Columbus Electric &c. Co.,* 32 Ga. App. 140 (1) (122 SE 824). And see *Carstarphen v. Ivey,* 66 Ga. App. 865 (19 SE2d 341); *Delcher Bros. Storage Co. v. Reynolds &c. Lumber Co.,* 80 Ga. App. 288 (55 SE2d 864).

Here we probably have a stronger case for holding Tankersley to be the servant of the defendant at the time in question in that the undisputed testimony is that he was not actually working for the plaintiff on Saturday. Control is the determinative factor in

these cases, and the defendant had such control here. In addition, it is quite probable that Tankersley could be considered a subservant here in that there was at least implied authority for the repairman to get some help in his work. See *Cooper v. Lowery*, 4 Ga. App. 120 (60 SE 1015) ; *Cowart v. Jordan*, 75 Ga. App. 855 (1) (44 SE2d 804) ; *Carter v. Bishop*, 209 Ga. 919 (2) (76 SE2d 784).

Furthermore, in order for the defendant to be liable it was not even necessary that Tankersley be its servant. All that was needed was to show that he was *not*, on that occasion, the servant of plaintiff, the reason being that plaintiff could not recover for the negligence of its own servant. There was ample evidence here for the jury to find that Tankersley was not the plaintiff's servant.

■ Was there any evidence of negligence on Tankersley's part? This inquiry becomes important here because, absent negligence on the part of the resident defendant (Tankersley), the nonresident defendant would be entitled to have a judgment against it set aside, no matter how gross its negligence. See *Southeastern Truck Lines v. Rann*, 214 Ga. 813, 816 (108 SE2d 561) and cases there cited. It is undisputed that Tankersley did not at any time use either the electric torch or the welder. He was directed by Fulghum's repairman to sprinkle water in the area where the sparks had fallen from the repair work. (While there was some testimony by the repairman that one of plaintiff's officers had directed some of the water sprinkling, the jury resolved this against the defendants.)

Even conceding that the defendant can raise the issue of the lack of negligence on the part of Tankersley (see *Nix v. Luke*, 96 Ga. App. 123 (1), 99 SE2d 446), we feel that the jury was authorized to find that there was some negligence on Tankersley's part in the manner in which he did the sprinkling. It was not necessary that his negligence be as great as that of the defendant in order to hold him jointly liable. *Eidson v. Maddox*, 195 Ga. 641 (24 SE2d 895).

■ Defendant raises also the issue of proximate causation, depending primarily on the lapse of time (some 30 hours) between the last of the repair work and the fire. The plaintiff had

only circumstantial evidence on which to travel but this quite frequently happens in fire cases. As was said in *Gainesville &c. R. Co. v. Edmondson,* 101 Ga. 747, 751 (29 SE 213), "But few cases will occur, however, where the fact that the fire was communicated is susceptible of direct proof. Consequently such proof must be more or less circumstantial." Accord: *Southern R. Co. v. Williams,* 113 Ga. 335 (5), 337 (38 SE 744). See *Central of Ga. R. Co. v. Trammell,* 114 Ga. 312 (1) (40 SE 259); *Southern R. Co. v. Herrington,* 128 Ga. 438 (3), 440 (57 SE 694); *Morrow v. Johnston,* 85 Ga. App. 261 (68 SE2d 906). As to the sufficiency of circumstantial evidence, see *Christian Construction Co. v. Wood,* 104 Ga. App. 751, at 757 (123 SE2d 151).

In view of the several witnesses plaintiff produced who testified to the effect that sawdust fires have a tendency to smolder for long periods before they burst into flame and the uncontradicted evidence that there were no electrical storms during the thirty-hour period and discounting the electric wiring as a cause (it had recently been rewired), we cannot say that the jury was unauthorized to find that the combined negligence of the defendant and Tankersley was the proximate cause of the fire.

Therefore, it was not error to overrule the defendant's motion for a judgment notwithstanding the verdict. The same reasoning applies to the general grounds of the motion for new trial, which were also properly overruled.

■ In its bill of exceptions, the defendant failed to specify as material the defendant's amendment to its motion for new trial setting out the various special grounds and the charge of the court. The plaintiff (defendant in error) has not insisted that this court cannot consider the assignments of error on these points and the defendant (plaintiff in error) has neither moved to amend its bill of exceptions under *Code* § 6-1309 nor suggested diminution of the record as provided in *Code* § 6-812.

"One who assigns error must show error by the record." *Branch v. Branch,* 194 Ga. 575 (22 SE2d 124). "Questions not made in the record can not be considered by this court, although presented in the brief and urged in the argument of counsel for plaintiff in error." *Hood v. Mayor &c. of Griffin,* 113 Ga. 190 (1) (38 SE 409). "[T]he burden is on the party alleging error

to show it affirmatively by the record." *Campbell v. Powell*, 206 Ga. 768 (3) (58 SE2d 829). "Indeed, it may be said as the basic axiom of appellate practice that it is absolutely necessary that the record show all matters necessary to a proper consideration of the cause on appeal, and the appellate court will not consider matters not in the record." 2 E.G.L. 122, Appeals, § 105.

An attorney owes the duty to the reviewing court as well as to his client to present a complete record on appeal for, as Justice Lumpkin so aptly stated over one hundred years ago: "To expect infallibility or exemption from error, however, under the circumstances, and especially without sharing the labor with us, by supplying the necessary facilities for adjudicating causes, is as unreasonable as the edict of Pharaoh, which exacted the usual tile of brick from the Israelites, without furnishing the proper allowance of straw and mortar for their manufacture." *Chapman v. Gray*, 8 Ga. 337, 340.

The duty of one who brings a case to this court for review would seem clearly to dictate that he should so prepare his bill of exceptions as to enable the court to know what his complaint is, and to supply us with all of the record in the case that is material to a clear understanding thereof. Where it is contended that a portion of the charge is erroneous and the whole charge is not specified and sent up as a part of the record, we have no way of knowing whether the court may have, in other portions of the charge, effected correction of what is claimed to be error. When an amendment to a motion for new trial is not specified or sent up, we have no way of knowing what the grounds of error claimed therein may be, or whether the assignments therein are sufficient to comply with the law. When it appears that portions of the record essential to a determination of the errors complained of have not been specified or sent up, an appropriate remedy for the plaintiff in error is outlined in *Atlanta Coca-Cola Bottling Co. v. Hathcox*, 45 Ga. App. 822 (1) (165 SE 902), and for the defendant in error in *Code* § 6-812.

But notwithstanding the failure of plaintiff in error here to specify as material and have sent up those portions of the record mentioned above, or to avail itself of the remedy indicated in *Hathcox*, the court has, sua sponte, ordered the omitted matter

sent up due to the apparent closeness of questions involved. In so doing we feel that we are heeding the admonition of *Code* § 6-1307 relating to technical defects. As Judge Bell recently observed, "Appellate courts should strive to eliminate, not encourage, unnecessary technicalities serving no useful purpose, but which tend to divert or nullify justice." *General Acc. &c. Corp. v. Titus,* 104 Ga. App. 85, 87 (121 SE2d 196). And see, *Code* §§ 6-810 (4, 5), 6-1403; *Northeast Atlanta Bank v. Zec,* 196 Ga. 114 (1, 2), 116 (26 SE2d 183) and citations; Leverett, Hall & Christopher, Georgia Practice & Procedure, 549, § 23-11; 2 E.G.L. 123, Appeals, § 109.

 Defendant's amendment to its motion for new trial is attacked as having technical imperfections. That portion of the bill of exceptions relating to the overruling of the amended motion reads, "[S]aid defendant then and there excepted, now excepts, and assigns said ruling and judgment as being contrary to law . . ." Nowhere does the specific word "error" appear in this assignment. However, this failure is not enough to prevent our consideration of the assignment as it does sufficiently "specify plainly the decision complained of and the alleged error." *Code* § 6-901, as amended; *State Highway Dept. v. Haynie,* 99 Ga. App. 172 (108 SE2d 107) (and see the concurring opinion there). There is no magic in the mere use of the word "error." See generally 2 E.G.L. 112, Appeals, § 89.

Next plaintiff contends that the special grounds of the motion for new trial are incomplete in failing to meet the standard of *Code* § 6-901, as amended, and many cases holding that it is necessary "to set forth literally *or* in substance *or* to designate the pages of the record where it may be found, the pleadings and evidence, necessary to a clear understanding of the exception" (Emphasis added). *Mutual Benefit Health &c. Assn. v. Hickman,* 100 Ga. App. 348, 364 (111 SE2d 380). In almost every volume of the reports of our appellate courts can be found similar pronouncements. Their effect, unless the plaintiff in error sets forth the evidence "literally" or by referring to pages of the record, is that the plaintiff in error runs the risk that the appellate court may deem his ground "incomplete" as "not setting forth the evidence in substance."

■ But the dispensation of justice ought not to turn on such tenuous considerations and, bearing in mind the authorities cited in the last preceding section of this opinion, we now move to a consideration of the merits of the defendant's amended motion for new trial. All of the special grounds of defendant's motion deal with the charge of the court and the common thread of its complaint is that the court did not charge as to the possibility of separate liability on the part of the two defendants and that under the charge as given the jury was required, in returning a verdict for the plaintiff, to return it against *both* defendants. Defendant cites *Central Truckaway System v. Harrigan,* 79 Ga. App. 117 (2, 3) (53 SE2d 186); *Royal Cab Co. v. Hendrix,* 96 Ga. App. 44 (99 SE2d 355); *Daniel v. Robinson,* 96 Ga. App. 342 (100 SE2d 94); *Kelly v. Locke,* 186 Ga. 620 (198 SE 754); *Vaughan v. Farmers &c. Bank,* 146 Ga. 51 (90 SE 478), and *Minor v. Fincher,* 206 Ga. 721 (58 SE2d 389).

We do not think that *Central Truckaway* is in point. The charge dealt with there was substantially different from that here. In *Royal Cab, Daniel* and *Kelly* the *plaintiff* was complaining of the charge. Quite obviously such a charge places on the plaintiff a greater burden than does the law, and as to him it is error.

That brings us down to a consideration of *Vaughan* and *Minor* where, as here, a defendant complains of the charge. In *Vaughan* suit was brought on a note against the maker and several indorsers. Under the facts of the case it appeared that plaintiff was entitled to a verdict against the maker as a matter of law, and hence the jury was required to find against him, but was not required to find against the indorsers and that they might have found against some of them and not against all. In giving instructions as to the form of the verdict the court directed that if they should find for the plaintiff it should be "We, the jury, find for the plaintiff," or if for the defendants, "We, the jury, find for the defendants." The Supreme Court held such instruction to be error, and pointed out that it was incumbent upon the court to instruct as to the various verdicts that might have been authorized by the evidence.

In *Minor* suit was brought against joint trespassers for the

cutting of timber. One of them resided in the county where the action was brought while the other resided in another county—just as is the case here. The court charged: "I charge you, gentlemen, in this case, the plaintiff has brought her suit against L. L. Minor and A. C. Rogers, Jr., jointly, contending that both defendants are jointly liable because Minor directed Rogers to cut timber on Land Lot 263 and Rogers carried out these directions. I charge you, you can't bring in a verdict against Minor alone, but if you bring a verdict for plaintiff, it must be against both defendants, this is because Minor does not reside in this county and this (court has) jurisdiction over Minor only if he and Rogers were joint wrongdoers." P. 730. The Supreme Court held the charge to be error, saying: "Insofar as the charge complained of instructed the jury that they could not return a verdict against the nonresident defendant unless they found against the resident defendant, the charge was not error. It was error, however, to instruct the jury that, in the event they returned a verdict for the plaintiff, 'it must be against both defendants.' Such charge was erroneous because the jury under proper evidence might return a verdict for a plaintiff against a resident defendant alone, without returning a verdict against the nonresident defendant joined in the action." P. 731.

In the case sub judice the court throughout the charge referred to the defendants in the plural, and at no time instructed the jury that there might be any separate liability on their part, or that a verdict other than against both might be returned in the event they should find for the plaintiff, and when he came to instructing as to the form of the verdict charged: "If you find for the plaintiff the form of your verdict would be: We, the jury, find for the plaintiff, so many dollars and so many cents as you so find *against both of the defendants.*" (Emphasis added.)

Clearly, under *Vaughan* and *Minor* this charge was error, requiring the grant of a new trial.

*Judgment reversed. Carlisle, P. J., and Russell, J., concur.*