## 38987. CHRISTIAN CONSTRUCTION COMPANY v. WOOD *et al.*

DECIDED OCTOBER 20, 1961—REHEARING DENIED NOVEMBER 3, 1961.

752

*T. J. Long, Ben Weinberg, Jr.,* for plaintiff in error.

*Bullock, Yancey & Mitchell, Kyle Yancey, Robert L. Mitchell, Greene, Neely, Buckley & DeRieux, James H. Moore,* contra.

FRANKUM, Judge. ■ ■ The defendant in error made a motion to dismiss the writ of error on the ground that Travelers Insurance Co. was not made a party defendant in error to the bill of exceptions, and on other grounds hereinafter dealt with. Upon a written motion made by the plaintiff in error to amend the bill of exceptions in this court, the Travelers Insurance Co. was made a party defendant in error. The attorneys for Travelers Insurance Co. acknowledged service of the bill of exceptions, acknowledged receipt of copy thereof, waived all other and further service, and consented that the bill of exceptions be amended so as to name as an additional party defendant in error Travelers Insurance Co., and agreed and consented that the case be heard on its merit. The motion was granted by this court. See *Western Union Tel. Co. v. Griffith,* 111 Ga. 551 (36 SE 859); *Southeastern Greyhound Lines v. Estes,* 68 Ga. App. 248 (22 SE2d 679); *American Fidelity &c. Co. v. McWilliams,* 55 Ga. App. 658 (191 SE 191); *Miller v. Jackson,* 49 Ga. App. 309 (1) (175 SE 409). Accordingly, this ground of the motion to dismiss the writ of error is denied. Under the facts in this case *Ballard v. Harmon,* 200 Ga. 813 (38 SE2d 427), is not applicable. All further reference to defendant in error in this opinion refers only to Clarence Felton Wood.

■ Defendant in error also moved to dismiss the bill of exceptions relating to certain rulings of the court which, the defendant in error contends, are not properly raised or assigned as error. Unless every assignment of error is subject to such an attack the motion will be denied. *Dickson v. Burwell,* 113 Ga. 93 (38 SE 319). Where some of the assignments of error are good while others are bad, it is the better practice to call the court's attention to the bad assignments of error in a brief, rather than to make a motion to dismiss. *Dickson v. Burwell,* supra. As the bill of exceptions in the instant case contains valid assignments of error, the motion is denied.

■ The defendant in error contends that an assignment of error cannot be based on the denial by the court of the motion by

plaintiff in error for judgment notwithstanding the verdict because the motion for a directed verdict was not reduced to writing. The cases cited by the defendant in error as authority for this contention show facts which require a written order, e.g., rulings on demurrer (*Construction &c. Laborers Union v. Williams Constr. Co.*, 212 Ga. 691, 95 SE2d 281), or an order striking certain pleadings (*Salem v. Samuel*, 102 Ga. App. 681, 117 SE2d 547), etc. However, the rulings of a court made during the progress of a trial, such as a ruling on motion for directed verdict, are seldom reduced to writing. Accordingly, where the bill of exceptions recites that a certain ruling of the court was made during the course of the trial, and where the court certifies the recital of fact as true, the ruling is such a ruling that an assignment of error may be made thereon.

Therefore, the defendant (plaintiff in error) has made a proper assignment of error on the denial of its motion for judgment notwithstanding the verdict.

The gist of the defendant's motion for a judgment notwithstanding the verdict is that there was no evidence adduced at the trial of this case to show that the board of a scaffold which broke and gave way under the plaintiff's weight was one placed in the room by the defendant or was one furnished by the defendant to be used on the scaffolds. The defendant points out that two other contractors maintained boards at the building to be used for platform purposes on the scaffolds. Without repeating a great deal of testimony, we are of the opinion that the evidence was sufficient to form an issue for the jury as to whether the defendant furnished a scaffold board which was not reasonably suited for the purpose intended, whereby the plaintiff, a workman and invitee, was injured while working on a scaffold when a board broke under his weight. *Chancey v. Shirah*, 96 Ga. App. 91 (99 SE2d 365); *Dodd v. Callaway*, 76 Ga. App. 629 (3) (46 SE2d 740). Several witnesses testified that the scaffolding boards of the other contractors had been removed from this particular room where the plaintiff was injured. Raymond Chesser, who was working with the plaintiff testified: "Christian [the defendant] furnished the board. Wren Brothers had all their boards with stripes on them so they could keep them sep-

arated from Christian's boards. Wren's also had a cleat on them to keep them from slipping over [the scaffold]. . . Q. Do you know where he [Kahler] obtained this board? A. It was on the floor in the basement. In other words, that space that was between the scaffold, we had to get him [Kahler] to put more [boards] up to where we could get out to these pipes that we had to tack the extra pieces to, we got him [Kahler] to put them up there and then we got out on them. Christian furnished this particular board." On cross-examination this witness testified: "Q. Now, you said two times that Christian Construction Company furnished the boards, and when you say that do you mean that you saw Christian employees taking boards down into the basement? A. Yes, sir; That is all I meant by that. They hauled them from the surface to the basement and they also helped put them up on the scaffold. The scaffold that they were putting boards on was the one on steel frames that covered about eighty to ninety percent of the area down there in the basement. That is the scaffold that Woody fell from. . . Q. Now, as a matter of fact, Mr. Chesser, you don't know who put the scaffold up, do you, other than the fact that you saw some laborers putting boards on the scaffold? A. I just saw laborers, I don't know whose, I know they were Christian's, but I don't know them personally. I don't know them. I don't know who owned the scaffold, I just know that Christian put it down there and put it up. I don't know who owned the boards. It's just like I said, they put them down there, I don't know whether they owned them or not. Q. When you say 'they put them down,' you are talking about that you saw some laborers taking boards down from the ground level and putting them down in the basement; is that correct? A. Yes."

The president of the defendant corporation testified: "We covered the entire area of the ground floor in the operation building, practically all of it was covered with scaffolding for the use of the electricians, the plasterers, the mechanical trade, and the lathers." Officers and agents of the defendant corporation testified that they erected the scaffolding in the room where the plaintiff was injured, although it is disputed whether the defendant's agent or employee placed the particular board

which broke in the room where it was later used on the scaffold. The evidence shows that the defendant placed many boards in the room for the purpose of being used on the scaffolds, and the subcontractors, mechanics, etc., were free to move and use these boards for the purpose of scaffolding. The board which broke under the plaintiff's weight was introduced into evidence, and competent witnesses testified that because the board contained knots running transversely from side to side, it was unfit for use on a scaffold to support a man's weight.

While no witness testified that the board which broke under the plaintiff's weight was absolutely the one furnished by the defendant, there were facts and circumstances to authorize the jury to conclude that such board was furnished by the defendant. The situation is best summed up by the language of Justice Bleckley, speaking for the court, in *Brown v. Matthews,* 79 Ga. 1 (4 SE 13): "Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts."

"Circumstantial evidence is sufficient to authorize a verdict in a civil case where it reasonably establishes the theory relied on, and preponderates to that theory rather than to any other reasonable hypothesis; but such evidence need not be inconsistent with all other reasonable theories beyond a reasonable doubt or to the point of logical demonstration." *Dodd v. Callaway,* 76 Ga. App. 629 (3), supra. See also *Radcliffe v. Maddox,* 5 Ga. App. 676, 681-683 (165 SE 841); *Pelham Phosphate Co. v. Daniels,* 21 Ga. App. 547, 557 (94 SE 846); *Chancey v. Shirah,* 96 Ga. App. 91, supra; *Sixth St. Corp. v. Daniel,* 80 Ga. App. 680 (3) (57 SE2d 210).

As stated in *Chancey v. Shirah,* 96 Ga. App. 91, 93, supra: "In the appellate court, it must appear that the circumstances proved tend in some proximate and reasonable degree to establish the conclusion claimed and render less probable all inconsistent conclusions."

We are of the opinion that the facts proved, as recited above, tend to establish the conclusion claimed by the plaintiff and render less probable all inconsistent conclusions.

758

The evidence supports the verdict, and the court did not err in denying the motion for a new trial upon the general grounds and in overruling the motion for a judgment notwithstanding the verdict.

■ Special grounds 4 through 7 of the amended motion for a new trial complain of a demonstration by the plaintiff before the jury. The demonstration consisted of placing several men on a 2 x 10 plank approximately 9 feet long, which was elevated 7½ inches above the floor by wooden blocks placed at the end of the planks. Under the facts of this case the court did not err in permitting the demonstration to be made in the presence of the jury in view of the testimony of the president of the defendant corporation that no 2 x 10 plank spanning 7 feet was safe for use as a scaffold board by a workman weighing 220 pounds. No reversible error is shown in the remaining special ground of the amended motion for a new trial.

*Judgment affirmed. Nichols, P. J., and Jordan, J., concur.*