**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**August 20, 2014**

# In the Court of Appeals of Georgia

A14A1300. YOUNG v. THE STATE.

ELLINGTON, Presiding Judge.

A Chatham County jury found Daqwan Young guilty beyond a reasonable doubt of armed robbery, OCGA § 16-8-41 (a); and possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b). Following the denial of his motion for a new trial, Young appeals, contending he received ineffective assistance of counsel. For the reasons explained below, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the record shows the following. On April 8, 2011, the victim visited his friend Rocregus Cummings. After the two men smoked marijuana and then went to a pizza restaurant, Cummings

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

suggested they go to visit Quayshaun Floyd, who was at his girlfriend's apartment. At that apartment, the three men smoked marijuana and listened to music. Young arrived and, with a shirt tied over his face and holding a shotgun, approached the victim. The victim did not know Young's name, but he recognized him as a cousin of Floyd. The victim had seen Young a few times before, including about three weeks earlier, when Young had been bragging about his new shotgun. Even though Young had a shirt tied over his face, the victim was able to identify him because of his distinctive eyes, skin tone, and voice. Young beat the victim with his fists and the butt of the shotgun and choked him. During the attack, Young did not interfere when Cummings left the room. Young and Floyd went through the victim's pockets and took his debit card, cell phone, and cash and then took his clothes and shoes as well.

Young and Floyd then told the victim to leave that apartment. The victim ran to the pizza restaurant and called 911 and reported that he had been robbed by Cummings, his cousin "Quayshaun," and another cousin whose name he did not know but whom he would be able to identify. A few days later, he identified Young as the perpetrator from among those pictured in a photo array prepared by an investigator. When Floyd was arrested, he was wearing the shoes and some of the clothes that had been stolen from the victim.

At trial, the victim identified Young as the gunman. During that testimony, the prosecutor held a piece of paper in front of his face so that it concealed the same area of his lower face as the shirt had concealed for the gunman. The prosecutor then asked if the victim could identify him by his voice and his eyes, even though the prosecutor and the victim had met only once. Defense counsel did not object to this demonstration.

An investigator testified, without objection, that he obtained records that documented multiple phone calls between Cummings' and Young's cell phones within minutes before the robbery and additional phone calls shortly after the robbery. The records also showed that Young's, Floyd's, and Cummings' cell phone were all "pinging off" a cell tower located near the scene of the robbery at the time it occurred.

Young's counsel's defense strategy at trial was to attack the credibility of the victim's identification and to argue that it was a case of mistaken identity.

On appeal, Young contends that his counsel failed to meaningfully test the State's case in several respects and therefore that he received ineffective assistance.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the

3

trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See also *Miller v. State*, 285 Ga. 285, 286 (676 SE2d 173) (2009) (In analyzing the prejudice element, "[t]he question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt.") (citation and punctuation omitted).

As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. Matters of trial tactics, even if they appear in hindsight to be questionable, are grounds to find counsel ineffective only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it.

(Citations and punctuation omitted.) *Dyer v. State*, 295 Ga. App. 495, 498 (1) (672 SE2d 462) (2009). Failure to satisfy either prong of the *Strickland v. Washington* standard is fatal to an ineffective assistance claim. *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995); *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991). As the appellate court, "[w]e accept the trial court's factual

4

findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

1. Young contends that his counsel's failure to object to the prosecutor's demonstration of partially covering his face allowed the State to improperly bolster the victim's identification and therefore prejudiced his defense. The trial court determined that it would have allowed the demonstration even over objection. And allowing such demonstrations is generally within the trial court's discretion.[2] We discern no improper bolstering of the victim's credibility and no ineffective assistance of counsel. *Burke v. State*, 316 Ga. App. 386, 389 (1) (a) (729 SE2d 531) (2012)

---

[2]

> Courtroom experiments sometimes make a practical demonstration of the question in issue, and are often the best evidence in elucidating the truth. Generally, whether courtroom demonstrations will be permitted rests within the sound discretion of the trial court. The weight of such evidence is for the jury, and varies according to the circumstances of similarity which they may find to exist between the experiments and the actual occurrence under investigation.

(Citations omitted.) *Powell v. State*, 226 Ga. App. 861, 862 (1) (487 SE2d 424) (1997). See also *Bryant v. State*, 282 Ga. 631, 638-639 (7) (651 SE2d 718) (2007); *Speed v. State*, 270 Ga. 688, 692 (15) (512 SE2d 896) (1999); *Christian Constr. Co. v. Wood*, 104 Ga. App. 751, 758 (3) (123 SE2d 151) (1961); Jack Goger, *Daniel's Georgia Handbook on Criminal Evidence*, § 7:35 (2013 ed., database updated August 2013).

("Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance.") (punctuation and footnote omitted).

2. Young contends that his counsel's failure to object to the prosecutor's leading questions to most of the State's witnesses undermined the defense strategy and therefore was deficient and prejudiced his defense. At the hearing on Young's motion for a new trial, his trial counsel testified that he generally does not object to leading questions because jurors tend to view them as "petty," and because objecting does not usually stop prosecutors from continuing to ask leading questions, although he will object when he believes the questions are harmful to his trial strategy. Having reviewed the specified questions in context, we conclude that the trial court's finding that the failure to object was a reasonable trial strategy under the circumstances and did not prejudice Young's defense was not clearly erroneous. *Sledge v. State*, 312 Ga. App. 97, 104 (2) (b) (717 SE2d 682) (2011). This argument lacks merit.

3. Young contends that cell phone location evidence was inadmissible because the State offered the evidence through a non-expert witness who lacked an appropriate level of knowledge. In addition, he contends that the cell phone records were inadmissible for the purpose offered because they showed that they do not accurately reflect a cell phone's location. As a result, Young contends, his trial

counsel's failure to object to the introduction of the cell phone location evidence was deficient and prejudiced his defense.

(a) As Young contends, the trial transcript fails to show that the investigator was qualified as an expert in the meaning of cell phone records by knowledge, skill, experience, training, or education. See OCGA § 24-7-702 (2013);[3] *Pullin v. State*, 272 Ga. 747, 749 (534 SE2d 69) (2000) (The analysis of billing data that indicates the location of the tower or towers that serviced a particular cellular call to determine the geographic location of a person during a call at issue has reached a scientific stage of verifiable certainty such that testimony on the issue is admissible, given the proper foundation.).[4] As the trial court found, however, a law enforcement officer may testify as an expert regarding cell phone location if he is qualified to do so. In ruling on Young's motion for a new trial, the trial court was not required to presume that the investigator in fact lacked sufficient knowledge, skill, experience, training, or

---

[3] We note that Young's trial took place in March 2013, after the effective date of Georgia's new Evidence Code, which applies to any motion, hearing or trial commenced on or after January 1, 2013. Ga. L. 2011, p. 99, §§ 2, 101.

[4] See Alexandra Wells, "Ping! The Admissibility of Cellular Records to Track Criminal Defendants," 33 St. Louis U. Pub. L. Rev. 487, 506-516 (V) (2014) (noting that courts have expressed conflicting answers to the question whether cellular phone records can be admitted only through expert testimony and, if so, whether a police officer was qualified as an expert).

education to offer expert testimony on the subject. Because Young failed to proffer evidence showing that an objection for lack of foundation would have been successful, the trial court's finding that Young was not prejudiced by trial counsel's failure was not clearly erroneous. *White v. State*, 293 Ga. 825, 827-828 (2) (c) (750 SE2d 165) (2013); *White v. State*, 293 Ga. App. 241, 242-243 (1) (666 SE2d 618) (2008); *Cannon v. State*, 167 Ga. App. 225, 226 (1) (305 SE2d 910) (1983) (physical precedent only). Moreover, given the victim's testimony, which provided direct evidence that Young was at the scene of the robbery, and was the gunman, we conclude that Young failed to show a reasonable likelihood that, but for counsel's failure to object, the outcome of the trial would have been different.

(b) Similarly, with regard to whether the cell phone records accurately reflected cell phone location in this case,[5] we conclude, in light of the direct evidence that Young was at the scene of the robbery, that Young failed to show a reasonable likelihood that, but for counsel's failure to object, the outcome of the trial would have been different.

---

[5] Cf. *Pullin v. State*, 272 Ga. at 749; *United States v. Schaffer*, 439 Fed. Appx. 344, 347 (5th Cir. 2011) (concluding that the field of "historical cell site analysis" to determine the past locations of a cell phone is "neither untested nor unestablished" and has been widely accepted in federal courts).

4. Young contends that certain prosecutorial argument was improper and inflammatory and that his counsel's failure to object to the argument constituted an abdication of his role as an advocate.

First, Young contends that his counsel should have objected when the prosecutor prefaced a question to the investigator for an explanation for "what that means, when we're talking about hitting or pinging off cell towers," saying, "[y]ou [the investigator] and me [the prosecutor] and [defense counsel] have been in court before and kinda know what that means." Young contends that defense counsel "should have objected to being lumped in with the State's advocates" in the group that supposedly understands this technology. Because his counsel failed to object, he contends, "the jury was left to believe that [defense] counsel's allegiance was behind the State's evidence."

Next, Young contends that counsel should have objected during closing argument, when the prosecutor argued that the defense's theory of misidentification would require the jury to believe that persons other than Cummings and Young had their cell phones on the night of the robbery and stated, "That's one theory. I find it comical, whatever, but you have to buy it to buy into their defense. And it's not Brian's [defense counsel's] fault; his client put him in this predicament, right?"

9

Pretermitting whether these remarks by the prosecutor were improper, we conclude, as the trial court did, that counsel's failure to object did not constitute an abdication of his role as an advocate and that Young failed to show a reasonable likelihood that, but for counsel's failure to object, the outcome of the trial would have been different.

5. Young contends that, even if none of his counsel's errors, when considered individually, prejudiced his defense so as to merit reversal, the collective effect of the errors did so prejudice his defense, warranting reversal by this Court, citing *Darst v. State*, 323 Ga. App. 614 (746 SE2d 865) (2013).[6] We conclude that, even considering

---

[6] In that case, we held that

> [w]hen a defendant establishes that trial counsel's performance was deficient in more than one respect, the court's determination of whether he or she was prejudiced thereby requires consideration of the collective effect of the deficiencies. It is the prejudice arising from counsel's errors that is constitutionally relevant, so each individual error by counsel should not be considered in a vacuum.

(Citations and punctuation omitted.) *Darst v. State*, 323 Ga. App. at 618 (2). See also *State v. Worsley*, 293 Ga. 315, 324 (3) (745 SE2d 617) (2013) ("To the extent that the performance of counsel was deficient in more than one respect, it is the collective effect of the deficiencies against which prejudice is measured.") (citation omitted); *Perkins v. Hall*, 288 Ga. 810, 812 (II) (708 SE2d 335) (2011) ("In weighing prejudice, we consider the collective prejudice from all of trial counsel's deficiencies.") (citation omitted); *Schofield v. Holsey,* 281 Ga. 809, 811-812 (II), n. 1 (642 SE2d 56) (2007) (Because it is the prejudice arising from counsel's errors that is constitutionally relevant, each individual error by counsel should not be considered in a vacuum. Rather, the cumulative effect of counsel's errors should be considered.

the collective effect of Young's claimed instances of ineffective representation, he failed to carry his burden of showing a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Accordingly, the trial court did not err in denying Young's claims of ineffective assistance of counsel. *Owens v. State*, 324 Ga. App. 198, 206 (2) (749 SE2d 783) (2013); *Tyner v. State*, 313 Ga. App. 557, 566-567 (6) (e) (722 SE2d 177) (2012).

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*

---

"Although the combined effects of trial counsel's errors should be considered together as one issue, [however,] it remains the case that this State does not recognize the cumulative error rule.") (citation and punctuation omitted).